IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK S. ALLEN,   No. CIV S-04-0322-LKK-CMK

      Plaintiff,

  vs.   FINDINGS AND RECOMMENDATIONS

MATTIE MAYHEW, et al.,

      Defendants.

_____/

      Plaintiff, proceeding pro se, brings this civil action pursuant to 42 U.S.C. §§ 1981 and 1985. Currently before the court is defendant's motion to dismiss (Doc. 42) filed August 24, 2007. Plaintiff filed his response in opposition on September 17, 2007 (Doc. 44). No reply brief was filed. This matter is was taken off calendar pursuant Local Rule 78-230(h).

**Background**

      Plaintiff originally filed this action against Gold Country Casino ("Casino"), the Berry Creek Rancheria of Tyme Maidu Indians ("Tribe"), Mattie Mayhew and DOES. Previously, defendants filed a motion to dismiss based on sovereign immunity which was granted and judgment was entered. On appeal, however, the Ninth Circuit Court of Appeal affirmed the judgment dismissing the claims against the Tribe and the Casino, but remanded the case to this

court regarding the possibility of claims against the individual defendant Mayhew and the DOE defendants under 42 U.S.C. §§1981 and 1985.  Accordingly, plaintiff was provided an opportunity to file a second amended complaint, which was filed in July 2007.  The second amended complaint names only individuals as defendants and claims a violation of civil rights under 42 U.S.C. §§ 1981 and 1985.

In resolving this motion to dismiss, the court construes the facts alleged in the second amended complaint in the light most favorable to plaintiff.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Accordingly, plaintiff claims in his second amended complaint that he was an employee of the Gold Country Casino in 2003.  While he was so employed, he took into his home three children, who were defendant Tasha Hernandez's children and defendants Mattie and Ricky Mayhew's grandchildren.  Plaintiff, who later petitioned the Tribe for tribal membership of these children, was told by the Indian Children Welfare Act (ICWA) representative, Ben Jiminez, that he would be reimbursed for his expenses regarding the children and was warned "not to go to the white man's court."  However, despite this warning, plaintiff filed guardianship proceedings in the California state court in September 2003.

Following the filing of guardianship proceedings, plaintiff claims that the defendants in this case filed false allegations against him and conspired together with the intent to terminate plaintiff's employment in retaliation for availing himself of the state court system and because he is white.  Specifically he claims that defendant Mattie Mayhew made the false allegations and conspired with Ricky Mayhew on a plan to file the false charges with the Tribe.  The other defendants in this case, including gaming commission members, casino security officers, human resources personnel, the general manager and director of security of the casino, and tribal council members all conspired together to terminate plaintiff's employment with the Casino under these false charges.  He states he was informed that casino security had conducted an investigation and found the allegations to be true, resulting in his termination.  He claims

casino personnel did not follow their own policies and procedures and they used their positions to further the conspiracy. He also claims the tribal council members knew about the actions taken, conspired with the others in terminating plaintiff's employment, and overstepped their authority by not acting appropriately.

Plaintiff claims his civil rights have been violated because he was prevented from obtaining legal representation, was not allowed to redress his grievances, he was denied freedom of speech, and was subjected to cruel and unusual punishment. He also claims he "was denied the ability to make and enforce contracts, to sue, be parties, and the equal benefit of all laws for the security of persons and property." (Opp., Doc. 44, at 8). He is asking for money damages including lost wages, health, dental and insurance coverage, and punitive damages.

Defendants filed the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (1), (2), (5), and (6), claiming this court lacks subject matter jurisdiction, plaintiff has failed to state a claim on which relief may be granted, and there has been insufficient service of process. The defendants' contend that this court lacks subject matter jurisdiction because all of the defendants, except Mattie Mayhew and Tasha Hernandez, are officials or agents of the Tribe and/or the Casino. Defendants claim that tribal sovereign immunity extends to all of these defendants. In addition, defendants argue that plaintiff fails to state a claim because under 45 U.S.C. §§ 1981 and 1985 plaintiff must allege he is a member of a racial minority or suspect class which plaintiff is not. Finally, defendants claim they have not been properly served under Rule 4(e) because plaintiff served them by mailing a copy of the second amended complaint to counsel.

**Subject Matter Jurisdiction**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). In a facial attack on subject matter jurisdiction, the court is confined to the allegations in the complaint; in contrast, in a factual attack, the court is permitted to look beyond the complaint to

extrinsic evidence. See id. (citing Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1036 (9th Cir. 2004)). As no extrinsic evidence has been produced in this matter, the court will consider this motion to dismiss as a facial attack on subject matter jurisdiction, and confine itself to the allegations in the complaint.

**Failure to State a Claim**

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss, the court must accept all allegations of material fact as true. See Erickson v. Pardus, 127 S. Ct. 2197 (June 4, 2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Sovereign Immunity**

In this case, defendants claim they fall within the tribal sovereign immunity permitted to protect the Tribe and Casino from action because they are "officials" or "agents" of the Tribe and/or the Casino, and that plaintiff cannot circumvent the sovereign immunity by naming individual tribal officials or agents in place of the Tribe. According to the second amended complaint, it appears that the defendants hold different positions within the Tribe and/or Casino, with the exception of Mattie Mayhew and Tasha Hernandez. It appears that Jimmy Edwards, Debbie Armus, Leatha Chase and Goodie Mix are members of the tribal council; Eleanor Boulton, Gus Martin, and Brian Sandusky are members of the gaming

commission; Ed White is the general manager of the Casino; Erin Harter is in human resources; Mike Hendrick is the director of security for the Casino; Art Hatley, Kirby Brown and Ricky Mayhew are casino security officers; and Terrilyn Steele is the director of ICWA. Accordingly, these defendants claim this case should be dismissed as to them.

"As a general proposition, Indian tribes are immune from suit in state or federal court." United States v. Oregon, 657 F.2d 1009, 1012 (9th C ir. 1981), see also Kiowa Tribe v. Mfg. Tech., Inc., 523 U.S. 751 (1998). This protection includes businesses owned and operated by a tribe if it functions as an arm of the tribe. See Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 978 (9th Cir. 2006). It also extends to tribal officials acting in their official capacity and within the scope of their authority. See Oregon, 657 F.2d at 1012 n. 8 (citing Davis v. Littell, 398 F.2d 83, 84-85 (9th Cir. 1968)). However, when tribal officials act beyond their authority, they lose their entitlement to the immunity of the sovereign. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978). This immunity does not extend to individual tribal members. See Puyallup Tribe, Inc. v. Dept. of Game, 433 U.S. 165, 171-73 (1977).

Defendants argue they are tribal officials acting in their official capacity and within the scope of their authority, and therefore tribal immunity protects them. However, defendants do not explain how their individual position entitles them to the protection as "tribal officials." Some of the individual defendants are undoubtably "tribal officials" in that they have been identified as "tribal council members." However, other defendants are identified as "casino security" and the connection between an employee of the Casino and "tribal official" has not been made. Defendants argue that because they are employees of the Tribe and/or the Casino, they are automatically immune. In support of their position, defendants cite to opinions from the Second Circuit Court of Appeal[1], the United States District Court for the District of Connecticut[2],

---

[1] See Chayoon v. Chao, 355 F.3d 141 (2d Cir. 2004).

[2] See Chayoon v. Mashantucket Pequot Tribal Nation, Docket No. 3:02CV0163 (D. Conn. May 31, 2002).

5

and the Connecticut State Appellate Court[3] which have held "that tribal immunity extends to all tribal employees acting within their representative capacity and with the scope of their official authority." Bassett v. Mashantucket Pequot Museum and Research Ctr., Inc., 221 F. Supp. 2d 271, 278 (D. Conn. 2002).

Defendants ignore Baugus v. Brunson, 890 F. Supp. 908 (E.D. Cal. 1995) in which this court found the term "tribal official" is usually "used to denote those who perform some type of high-level or governing role within the tribe" and that a casino security officer is not a "'tribal official' for purposes of sharing in tribal immunity." Baugus, 890 F. Supp. at 911. In addition, although the Ninth Circuit has held that employees of the tribal government are protected under tribal immunity, no Ninth Circuit case has extended the tribal immunity as far as defendants claim. See Linneen v. Gila River Indian Cmty., 276 F.3d 489 (9th Cir. 2002) (tribal community ranger); Imperial Granite Co. v. Pala Band of Mission Indians, 940 F.2d 1269 (9th Cir. 1991) (tribal governing body).

In Bassett, the Connecticut District Court found that unlike other courts, the courts within the Second Circuit have not limited the use of tribal immunity to high-level officers or officials, and held that "tribal immunity extends to all tribal employees acting within their representative capacity and within the scope of their official authority" including the executive director and project director of a tribal museum. In the Chayoon cases series cited by defendants, the state courts in Connecticut extended tribal immunity to "all tribal employees acting within their representative capacity and within the scope of their official authority." Chayoon v. Sherlock, 89 Conn. App. at 826. Defendants, however, do not cite to any California or Ninth Circuit case which has extended tribal immunity this far.[4] More importantly, they have failed to

---

[3] See Chayoon v. Sherlock, 877 A.2d 4 (Conn. App. Ct. 2005).

[4] Defendants do cite to Trudgeon v. Fantasy Springs Casino, 84 Cal. Rptr. 2d 65 (Cal. Ct. App. 1999). However, the California Court of Appeal did not take the immunity as far as the defendants in this case wish to extend it. In Trudgeon, the plaintiff had not named any individual defendant in the complaint, save for the DOE defendants, and the complaint

6

distinguish this case from the facts in Baugus. Although the cases from Connecticut may be persuasive, this court is more persuaded by its own opinion in Baugus.

Accordingly, the undersigned cannot find that based on the arguments presented in the motion to dismiss, that this case should be dismissed against all of the tribal and/or casino employees. Defendants have not shown that the tribal sovereign immunity unquestionably extends to all of the defendants by nature of their employment with the Tribe and/or Casino.

In addition, according to the requirement to construe pro se pleadings liberally and construing the facts present in the light most favorable to plaintiff, the court finds that plaintiff alleges claims against the defendants in their individual capacity, not in their official capacity. He argues that the defendants' actions were not related to their employment, but were extrinsic to any of their duties. He claims the defendants conspired to file false charges against him in order to get him fired in retaliation for availing himself of the California legal system. Although he also states that the defendants "used their positions to further the conspiracy" this alone does not lead to the conclusion that the defendants were acting within any official duty. Defendants have not shown, nor can they in a motion to dismiss, that the defendants' actions as set forth in the second amended complaint were related to their duties with the Tribe or Casino.

The exception to the above is in regards to the tribal council members. Tribal council members are clearly "officials" of the Tribe, and therefore would be protected by the tribal immunity assuming they were acting within their official duties. See Imperial Granite, 940

---

specifically stated that the defendants were each acting within the scope of their agency and employment. See id. at 72. The California trial court in that case held that "immunity would apply to individuals 'working within the scope of their employment.'" Id. However, the issue of how far the immunity protection would reach was not before the court, as there were no actual individuals named for the court to make that determination based on the position of the individual. The undersigned finds that the case therefore does not support the defendants' position that all employees of a business entity owned by a tribe would be protected under tribal immunity, especially in this case where the allegations could go to actions beyond the scope of employment. This is not a case where the plaintiff fell in the parking lot maintained by casino employees. In this case, plaintiff alleges the defendants went beyond their employment duties in making false statements with the purpose of getting the tribal authorities to terminate his employment.

F.2d 1269. In the second amended complaint, plaintiff states that defendants "Edwards, Armus, Chase, and Mix all had to know about this action due to their status in the tribe . . . ." This makes it clear that the only action these defendants took were within their tribal duties. As such, the tribal sovereign immunities would appear to apply to protect these four defendants, and the motion to dismiss them from the action should be granted.

As to the remaining defendants, it is unknown to the court the connection of the gaming commission, the role of the general manager of the casino, the director of casino security, the human resource personnel, and casino security to the Tribe.[5] As such, the court cannot find that the tribal sovereign immunity extends to these individuals. In addition, at least to some of the defendants, plaintiff clearly claims the actions were outside any potential "official duties" which may be an exception to tribal immunity in any case. Therefore, the motion to dismiss the remaining employee defendants should be denied.

**42 U.S.C. Sections 1981 and 1985**

Defendants' second ground for their motion to dismiss is that plaintiff fails to state a claim under 42 U.S.C. §§ 1981 or 1985. The basis of this argument is that plaintiff is white and not a member of a racial minority or suspect class.

Section 1981(a) states :

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

///
///

---

[5] Because this challenge to subject matter jurisdiction is a facial challenge, defendants did not provide the court with any declarations or other extrinsic evidence to show the court that the individuals were actually acting as an arm of the Tribe. It may be possible for the defendants to show that the gaming commission, for instance, is actually an arm of the Tribe similar to the Casino. They may also be able to show that the general manager and/or the director of casino security answers directly to the tribal council and therefore are "officials" of the Tribe. However, because there is no evidence before the court to support such conclusions, and the court is limited to what is plead in the complaint, the court cannot hold these individuals are officials of the Tribe and protected by immunity.

8

> property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kinds, and to no other.

Defendants argue that because plaintiff is white and not a racial minority, § 1981 does not apply. However, the United State Supreme Court has held that § 1981 "prohibits private racial discrimination against white persons as well as against nonwhites." Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989) (citing McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 296 (1976)). Therefore, defendants' position is unsupported, and the motion to dismiss the claims based on section 1981 should be denied.

Similarly, defendants argue that the claims based on section 1985 should be dismissed because plaintiff is not a member of a suspect class. Section 1985(3), the subsection relevant to this case[6], states in relevant part:

> If two or more persons . . . conspire . . ., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause

---

[6] Plaintiff does not specify under which subsection of § 1985 he brings this action. However, a fair reading of his complaint indicates that he brings this action under § 1985(3) - depriving persons of rights or privileges. Section 1985(1) affords protection only to federal officers and prospective federal officers. See Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717 (9th Cir. 1981). Section 1985(2) consists of two distinct parts. See Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991). "The first part of the subsection addresses conspiracies 'which deter by force, intimidation, or threat a party or witness in federal court.' The second part of the subsection creates a federal right of action for damages against conspiracies which obstruct the due course of justice in any State or Territory with intent to deny equal protection." Id. (quoting Bell v. City of Milwaukee, 746 F.2d 1205, 1233 (7th Cir. 1984)). In this case, although plaintiff speaks to a state court proceeding for guardianship, which he claims made the Tribe unhappy, he does not claim that any of the defendants conspired to deter him from bringing such an action. In fact, he claims that although he was warned not to take the issue to "the white man's court," he did file an action for guardianship in state court. He claims that the defendants retaliated against him for doing so. Thus, it appears likely that plaintiff intended to raise the issue under § 1985(3), for depriving him of the equal protection of the laws. However, even if he intended to raise the issue under § 1985(2), it would be raised under the second part of the subsection, for which the discussion regarding class-based animus is relevant. See id. (citing Kush v. Rutledge, 460 U.S. 719, 726 (1983)).

>to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985 does not provide substantial rights itself, but rather the "rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." United Bhd. of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 836 (1983).  In order to bring an action successfully under section 1985, a plaintiff must demonstrate,

>inter alia, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' ... and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'"

Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993)).

The United States Supreme Court last addressed this issue in United Bhd. of Carpenters and Joiners v. Scott, 463 U.S. 825, 836 (1983).  In Scott, the Supreme Court stated "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." 463 U.S. at 836.  The Ninth Circuit has interpreted this to mean that only those members of a class that requires special federal assistance in protecting its civil rights have standing to bring an action under § 1985.  See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536-37 (9th Cir. 1992). The Ninth Circuit "require[s] 'either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.'" Id. (quoting Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985)).

While this court finds it somewhat inconsistent to allow a claim for racial discrimination under § 1981 (the substantive law at issue here), but not allow a conspiracy claim

under § 1985 by the same individual, it is bound by Ninth Circuit precedent to find that plaintiff is not a member of a suspect or quasi-suspect class and therefore does not have standing to bring an action under § 1985. As such, the undersigned finds that plaintiff does not have standing to bring an action under § 1985, and those claims should be dismissed from this case.[7]

**Service of Second Amended Complaint**

Defendants' final claim in the motion to dismiss is that plaintiff failed to properly serve the second amended complaint. Defendants claim that the only service of the second amended complaint was upon defendants' attorney by mail and that this was not proper service under Federal Rule of Civil Procedure 4(e). In response, plaintiff acknowledges that the only service of the second amended complaint was by mail upon the defendants' attorney, stating that was the logical person to serve.

Rule 4(e)(2) requires service of a summons and complaint by

(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

In addition, Rule 4(e)(1) allows service by following state law, which under California law would include personal delivery to the defendant or an authorized agent, substitute service to someone at defendant's residence or place of business, service by mail with an acknowledgment of receipt, and possibly service by publication. See Cal. Code of Civ. Proc. §§ 415.10, 415.20, 415.30, 415.50.

---

[7] The court recognizes that other circuits have found that allegations of conspiracy motivated by racial animus against whites are cognizable under § 1985(3). See Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 593 (7th Cir. 1989) (abrogated on other grounds by Bd. of County Comm'rs, v. Umbehr, 518 U.S. 668 (1996)); Seils v. Rochester City Sch. Dist., 192 F. Supp. 2d 100, 123 (W.D.N.Y. 2002). However, the Ninth Circuit has not yet done so, and this court is bound by that precedent. See Zuniga v. United Can Co., 812 F. 2d 443, 450 (9th Cir. 1987).

In this case, plaintiff attempted to comply with Rule 4(e) by serving the second amended complaint, and presumably the summons, on the newly named defendants as well as Mattie Mayhew (who was named as a defendant in the previous complaint and presumably was properly served with that previous complaint) by serving the attorney who represented the Tribe, the Casino and Ms. Mayhew in this matter. However, plaintiff failed to realize that the defendants he named in the second amended complaint, who were not previously parties to this action, had to be served personally or through some other proper method pursuant to Rule 4(e). Service by mail to the attorney of record for the previous defendants was not proper service for the newly named defendants, unless the attorney was specifically authorized to accept service on those individuals' behalf, which does not appear to be the case. Therefore, the newly named defendants were not properly served with the summons and complaint and plaintiff will be required to re-serve those individuals, properly under Rule 4, for whom there remains to be claims against.

Ms. Mayhew, however, is not a newly named defendant. She was named as a defendant in the previous complaint, and was previously served with process. In these proceedings, the attorney of record for Ms. Mayhew has been Blain Green with Pillsbury Winthrop Shaw Pittman LLP. Plaintiff adequately served Ms. Mayhew with a copy of the second amended complaint by mailing a copy of the complaint to Ms. Mayhew's attorney of record, Mr. Green, pursuant to Federal Rule of Civil Procedure 5(b)(1). Consequently, service of the second amended complaint upon Ms. Mayhew is deemed proper.

**Discussion**

The undersigned finds that the tribal sovereign immunity applies at this time only to the four tribal council members named in the complaint: Jimmy Edwards, Debbie Armus, Leatha Chase, and Goodie Mix. This leaves several defendants who may be protected by the tribal immunity but for whom this court does not have enough information to make that determination.

Plaintiff's claims under 42 U.S.C. § 1981 are not dismissed because plaintiff has standing to bring these claims. This is not to say whether plaintiff will ultimately prevail on these claims, which is not the issue, but rather that he should be given the opportunity to support his allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Therefore, plaintiff's claims that his equal rights have been violated will survive. However, plaintiff does not have standing to bring any claims under 42 U.S.C. § 1985. Therefore, any claim based on the defendants conspiring to deprive him of his equal rights do not survive.

In his second amended complaint, again reading the complaint very broadly, plaintiff claims that Mattie Mayhew filed false charges against him with the intent to get him fired from his employment. He claims that defendants Kirby Brown and Art Hatley investigated these charges and found the allegations to be true. He also claims that Terrilyn Steele "violated a verbal contract or agreement when she took the children" out of plaintiff's house. These are specific acts done by these defendants which are separate and distinct from any allegation of conspiracy, and these defendants should not be dismissed.

As for defendants Boulton, Martin, Sandusky, Ricky Mayhew, Harter, White, and Hernandez, plaintiff's allegations, at best, surround a conspiracy in violation of § 1985. Plaintiff does not make any allegations as to any specific and overt acts of these defendants beyond a conspiracy to use their positions to further the false allegations made by Mattie Mayhew and investigated by Brown and Hatley. Therefore, as plaintiff has no standing to bring the conspiracy claims under § 1985, these individuals should be dismissed from the case. However, these deficiencies in pleading may be curable by amendment. Plaintiff may be able to state a claim against these individual defendants for violation of his rights under § 1981. Therefore, he should be allowed one last opportunity to amend his complaint.

Finally, the undersigned finds that service of process as to defendants Brown, Hatley and Steele was insufficient to establish personal jurisdiction over them. However, service of the second amended complaint on Ms. Mayhew's attorney of record is sufficient. Therefore,

1  plaintiff should be ordered to effect proper service of process under Rule 4(e) as to these
2  remaining defendants.[8]

3  Because it is possible that some of the deficiencies identified in this findings and
4  recommendations may be cured by amending the complaint, plaintiff is entitled to leave to
5  amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is
6  informed that, as a general rule, an amended complaint supersedes the original complaint. See
7  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). All claims alleged in the original
8  complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814
9  F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot
10 refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local
11 Rule 15-220. An amended complaint must be complete in itself without reference to any prior
12 pleading. See id. If plaintiff chooses to file a third amended complaint, he will be limited to
13 amending the complaint to try to link the named defendants to his claims under 42 U.S.C. §
14 1981.

15 Based on the foregoing, the undersigned recommends that
16   1.   Defendants' motion to dismiss be granted in part and denied in part;
17   2.   The motion to dismiss for lack of subject matter jurisdiction be granted as
18 to defendants Edwards, Armus, Chase and Mix;
19   3.   The motion to dismiss plaintiff's claims under 42 U.S.C. § 1981 be
20 denied;
21   4.   The motion to dismiss plaintiff's claims under 42 U.S.C. § 1985 be
22 granted;
23   5.   The motion to dismiss for failure to properly serve defendants be granted

---

[8] If plaintiff chooses to stand on his existing complaint, proper service of the second amended complaint should be accomplished. However, if he chooses to file a third amended complaint, it will be that document which should be properly served to provide personal jurisdiction over the named defendants.

as to all defendants except Mattie Mayhew;

   6. Defendants Edwards, Armus, Chase and Mix be dismissed with prejudice as protected under tribal immunity;

   7. Defendants Boulton, Martin, Sandusky, Ricky Mayhew, Harter, White and Hernandez be dismissed without prejudice for failure to state a claim;

   8. This action should proceed against defendants Mattie Mayhew, Kirby Brown, Art Hatley, and Terrilyn Steele based on a violation of 42 U.S.C. § 1981 only;

   9. Plaintiff be ordered to effect proper service of process as to defendants Brown, Hatley and Steele; and

   10. Once proper service of process has been completed, the remaining defendants be ordered to file a responsive pleading within 20 days.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2008

                     */s/ Craig M. Kellison*
                     **CRAIG M. KELLISON**
                     UNITED STATES MAGISTRATE JUDGE