1

2

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MARK S. ALLEN,                          No. CIV S-04-0322-LKK-CMK

12                Plaintiff,

13         vs.                               <u>FINDINGS AND RECOMMENDATIONS</u>

14   MATTIE MAYHEW, et al.,

15                Defendants.

16   _____/

17          Plaintiff, proceeding pro se, brings this civil action pursuant to 42 U.S.C. § 1981.

18   Currently before the court is defendant's motion to dismiss plaintiff's third amended complaint

19   (TAC) (Doc. 60).  Plaintiff filed a response in opposition (Doc. 71) and defendants filed a reply

20   (Doc. 72).  The hearing on the motion was taken off calendar pursuant Local Rule 78-230(h).

21         **I.      BACKGROUND**

22          Plaintiff originally filed this action against Gold Country Casino ("Casino"), the

23   Berry Creek Rancheria of Tyme Maidu Indians ("Tribe"), Mattie Mayhew and DOES.  The

24   defendants filed a motion to dismiss that complaint based on sovereign immunity which was

25   granted and judgment was entered.  On appeal, however, the Ninth Circuit Court of Appeal

26   affirmed the judgment dismissing the claims against the Tribe and the Casino, but remanded the

                                              1

case to this court regarding the possibility of claims against the individual defendant Mayhew and the DOE defendants under 42 U.S.C. §§1981 and 1985.  Plaintiff was provided an opportunity to file a second amended complaint, which was filed in July 2007.  The defendants filed a motion to dismiss the second amended complaint which was granted in part and denied in part. (Docs. 46, 50).

Defendants' motion to dismiss the second amended complaint was granted as to defendants Edwards, Armus, Chase and Mix for lack of subject matter jurisdiction (immunity), as to plaintiff's claims under 42 U.S.C. § 1985, and for failure to properly serve all defendants except Mattie Mayhew.  The motion was denied as to plaintiff's claims under 42 U.S.C. § 1981.  Defendants Edwards, Armus, Chase and Mix were dismissed with prejudice as protected under tribal immunity.  Defendants Boulton, Martin, Sandusky, Ricky Mayhew, Harter, White, Hernandez and Hedrick were dismissed without prejudice for failure to state a claim.  Plaintiff was provided an opportunity to file a third amended complaint to attempt to link defendants Boulton, Martin, Sandusky, Ricky Mayhew, Harter, White, Hernandez and Hedrick to his claim under 42 U.S.C. § 1981.  Plaintiff was also ordered to effect proper service of process on the defendants.

Pursuant to court order, plaintiff filed his third amended compliant on June 17, 2008.  In his third amended complaint, plaintiff names Mattie Mayhew, Ricky Mayhew, Kirby Brown, Eleanor Boulton, Gus Martin, Brian Sandusky, Erin Harter, Ed White, Terrilyn Steele, Mike Hedrick, Art Hatley, Tasha Hernandez and Does 1 though 50 as defendants.  The facts alleged in the third amended complaint are similar to those raised in the second amended complaint.

The court previously summarized plaintiff's allegations as follows:

Plaintiff claims that he was an employee of the Gold Country Casino in 2003.  While he was so employed, he took into his home three children, who were defendant Tasha Hernandez's children and defendants Mattie and Ricky Mayhew's grandchildren.  Plaintiff, who later petitioned the Tribe for tribal

membership of these children, was told by the Indian Children
Welfare Act (ICWA) representative, Ben Jiminez, that he would be
reimbursed for his expenses regarding the children and was warned
"not to go to the white man's court."  However, despite this
warning, plaintiff filed guardianship proceedings in the California
state court in September 2003.

       Following the filing of guardianship proceedings, plaintiff
claims that the defendants in this case filed false allegations against
him and conspired together with the intent to terminate plaintiff's
employment in retaliation for availing himself of the state court
system and because he is white.  Specifically he claims that
defendant Mattie Mayhew made the false allegations and conspired
with Ricky Mayhew on a plan to file the false charges with the
Tribe.  The other defendants in this case, including gaming
commission members, casino security officers, human resources
personnel, the general manager and director of security of the
casino, and tribal council members all conspired together to
terminate plaintiff's employment with the Casino under these false
charges.  He states he was informed that casino security had
conducted an investigation and found the allegations to be true,
resulting in his termination.  He claims casino personnel did not
follow their own policies and procedures and they used their
positions to further the conspiracy.  He also claims the tribal
council members knew about the actions taken, conspired with the
others in terminating plaintiff's employment, and overstepped their
authority by not acting appropriately.

Plaintiff's third amended complaint has eliminated reference to the tribal council

members as this court directed.  In addition to the above, plaintiff adds some details to his

alleged facts, but none that drastically alter the above summary.  Of some importance, plaintiff

has attempted to link some of the defendants to his alleged wrongdoings.  Specifically, the third

amended complaint includes the allegations that defendant Ricky Mayhew was involved in the

investigation and he acted along with defendant Brown in stating that an investigation had been

conducted.  He alleges that defendants Boulton, Martin and Sandusky were informed of the plan

to file the false charges by defendants Ricky Mayhew and Brown, and that defendants Boulton,

Martin and Sandusky were personally involved in the investigation and decision to fire plaintiff.

He also alleges that defendant Hedrick was involved with the alleged investigation because, as

defendant Hatley's superior, he had to know of and approve the investigation.  As to defendant

White, plaintiff  alleges that he was denied an opportunity to meet with defendant White, even

1   after he was promised a meeting with him.  He also claims defendant White sent him a letter

2   which stated that although the charges against him could not be confirmed or denied, plaintiff

3   was still terminated.   As to defendant Harter, plaintiff states she lied to him by stating he would

4   be allowed to meet with defendant White and herself, but no additional meetings were held.

5   Finally, in an attempt to link defendant Hernandez, plaintiff states that she conspired with

6   defendant Steele to take the children away from plaintiff.

7          Finally, plaintiff's third amended complaint cites to a recent United States

8   Supreme Court case, CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951 (2008), as support for his

9   position that he can maintain a retaliation claim under § 1981.  Plaintiff also attempts to set the

10  ground work to establish the Tribe and Casino waived sovereign immunity, and requests the

11  court allow him to amend his complaint again and bring the Tribe and Casino back into this

12  action.

13          ## II.       MOTION TO DISMISS

14          Defendants bring this motion to dismiss pursuant to the Federal Rules of Civil

15  Procedure, Rule 12(b)(1), (5) and (6) on the grounds that this court lacks subject matter

16  jurisdiction, plaintiff's third amended complaint fails to state a claim on which relief may be

17  granted, and there has been insufficient service of process.

18          In considering a motion to dismiss, the court must accept all allegations of

19  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct 2197

20  (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.

21  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital

22  Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per

23  curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v.

24  McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than

25  those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

26  / / /

4

1    A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)

2 can be either a facial or factual attack.  See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.

3 2004).  In a facial attack on subject matter jurisdiction, the court is confined to the allegations in

4 the complaint.  In a factual attack, the court is permitted to look beyond the complaint and may

5 consider extrinsic evidence.  See id. (citing Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1036

6 (9th Cir. 2004)), Savage v. Glendale Union High Sch., 434 F.3d 1036, 1040 n.2 (9th Cir. 2003).

7 Jurisdiction must generally be determined prior to a federal court considering a case on its merits.

8 See United States v. Larson, 302 F.3d 1016, 1019 (9th Cir. 2002) (citing Steel Co. v. Citizens for

9 a Better Env't, 523 U.S. 83, 94 (1998)).

10    In order to survive dismissal for failure to state a claim, a complaint must contain

11 more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

12 allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

13 Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  Allegations of specific facts are not

14 necessary so long as the statement of facts gives the defendant fair notice of what the claim is and

15 the grounds upon which it rests.  See id., Erickson, 127 S. Ct. at 2200.

16    To determine whether a complaint states a claim upon which relief can be granted,

17 the court generally may not consider materials outside the complaint and pleadings.  See Cooper

18 v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

19 1994).  The court may, however, consider: (1) documents whose contents are alleged in or

20 attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;

21 (2) documents whose authenticity is not in question, and upon which the complaint necessarily

22 relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,

23 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,

24 see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).  Finally, leave to amend must be

25 granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't

26 of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d

1  1122, 1126 (9th Cir. 2000) (en banc).

2        A.    SUBJECT MATTER JURISDICTION

3              Defendants claim this court lacks subject matter jurisdiction over the claims

4  against defendants Bolton, Martin, Sandusky, Harter, White, Hedrick, Steele and Hatley because

5  these defendants are officials of the Tribe or its Casino, and they are therefore covered by tribal

6  sovereign immunity.

7              The issue of tribal sovereign immunity was discussed at length in relation to the

8  defendants' prior motion to dismiss.  This court concluded that in a facial attack on subject

9  matter jurisdiction, which was before the court at that time, there had not been sufficient

10  information to make a determination as to whether any of these moving defendants were tribal

11  officials acting in their official capacity and within the scope of their authority.  Before the court

12  now are declarations from each of these defendants explaining their position with the Tribe or its

13  Casino.  As these declarations are extrinsic evidence, the motion before the court is a factual

14  attack on this court's subject matter jurisdiction.  To the extent these declarations explain the

15  defendants' position within the Tribe and/or Casino, the court will consider the declarations.

16              Defendant Boulton states during the time relevant to this action, she was a

17  member of the Tribal Gaming Commission.  She was elected by the Tribe's general membership

18  to the position of Tribal Gaming Commissioner.  As a Tribal Gaming Commissioner, she

19  answered directly to the Tribe's general membership.  The Tribal Gaming Commission is

20  responsible for ensuring compliance with the law and integrity of the gaming at the Casino.  The

21  Gaming Commission established a Surveillance Department, which reports directly to the

22  Commission.  Defendant Boulton's duties included meeting with the Surveillance Department

23  and its employees to ensure the integrity of the gaming operation.

24              Defendant Martin states at the time relevant to this action he was a member of the

25  Tribal Gaming Commission.  He was elected to the position of Tribal Gaming Commissioner by

26  the Tribe's general membership.  As a Tribal Gaming Commissioner, he answered directly to the

1   Tribe's general membership.  The Tribal Gaming Commission is responsible for ensuring

2   compliance with the law and integrity of the gaming at the Casino.  The Gaming Commission

3   established a Surveillance Department, which reports direction to the Commission.  Defendant

4   Martin's duties included meeting with the Surveillance Department and its employees to ensure

5   the integrity of the gaming operation.

6           Defendant Sandusky states at the time relevant to this action he was a member of

7   the Tribal Gaming Commission.  He was elected to the position of Tribal Gaming Commissioner

8   by the Tribe's general membership.  As a Tribal Gaming Commissioner, he answered directly to

9   the Tribe's general membership.  The Tribal Gaming Commission is responsible for ensuring

10  compliance with the law and integrity of the gaming at the Casino.  The Gaming Commission

11  established a Surveillance Department, which reports direction to the Commission.  Defendant

12  Sandusky's duties included meeting with the Surveillance Department and its employees to

13  ensure the integrity of the gaming operation.

14          Defendant White states at the time relevant to this case, he served as the General

15  Manager of the Casino.  He was hired by the Tribal Council, and reported directly to the Tribal

16  Council on a regular basis.  As General Manager, defendant White had overall management

17  responsibility for the Casino.  The Casino is regulated by the Tribal Gaming Commission to

18  ensure compliance with the law and integrity of gaming.

19          Defendant Harter states she was the Director of Human Resources for the Casino

20  during the relevant time period to this case.  As the Director, she had overall responsibility for

21  personnel policy and decisions at the Casino, and she reported directly to the Casino General

22  Manager.  She also reported directly to the Tribe and/or its Gaming Commission when she was

23  consulted regarding employment policies and procedures.  As the Director, it was her duty to

24  meet with terminated employees and provided them paperwork relating to their benefits.

25          Defendant Hedrick states that he is the Security Manager for the Casino.  As

26  Security Manager, he is responsible for assuring the safety of persons and property at the Casino.

He reports directly to the Casino's General Manager.

Defendant Brown states that during the relevant time period, he was Director of the Surveillance Department for the Casino.  The Surveillance Department was established by the Tribe, and it reports directly to the Tribal Gaming Commission.  As Director of the Surveillance Department, defendant Brown was responsible for managing surveillance in the Casino to ensure compliance with the law and integrity of the gaming operation.  His duties included supervising surveillance employees, hiring and terminating employees, and coordinating with the Tribal Gaming Commission.

Defendant Hatley states he is the Assistant Security Manager-Investigator for the Casino.  His job duties include conducting gaming-related investigations at the request of the Tribe and the Tribal Gaming Commission.

Defendant Steele states she is the Indian Child Welfare Act Director for the Tribe.  She was hired into that position by the Tribal Council.  As ICWA Director, defendant Steele represents the Tribe in juvenile dependency and delinquency matters involving children of Tribal members.  She also arranges for visitation of Indian children who are cared for outside their parents' home.  Defendant Steele answers directly to the Tribal Council, and she acts on their behalf in carrying out her responsibilities.

In ruling on the defendants' prior motion to dismiss, the undersigned outlined the relevant law regarding tribal immunity:

> "As a general proposition, Indian tribes are immune from suit in state or federal court." United States v. Oregon, 657 F.2d 1009, 1012 (9th C ir. 1981), see also Kiowa Tribe v. Mfg. Tech., Inc., 523 U.S. 751 (1998).  This protection includes businesses owned and operated by a tribe if it functions as an arm of the tribe.  See Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 978 (9th Cir. 2006).  It also extends to tribal officials acting in their official capacity and within the scope of their authority.  See Oregon, 657 F.2d at 1012 n. 8 (citing Davis v. Littell, 398 F.2d 83, 84-85 (9th Cir. 1968)).  However, when tribal officials act beyond their authority, they lose their entitlement to the immunity of the sovereign.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978).  This immunity does not extend to individual tribal

1    members.  See Puyallup Tribe, Inc. v. Dept. of Game, 433 U.S.
     165, 171-73 (1977).

2

3         The undersigned also discussed the application of tribal immunity to tribal

4    employees.  At the time of the prior ruling, the Ninth Circuit had not addressed whether tribal

5    immunity applied to tribal employees acting within the scope of their authority.  Since that

6    decision, however, the Ninth Circuit has specifically addressed this issue.  See Cook v. AVI

7    Casino Enterprises, Inc., 548 F.3d 718, 726-27 (9th Cir. 2008).  In Cook, the Ninth Circuit

8    reached the conclusion that tribal employees are no different than tribal officials acting in their

9    official capacity and within the scope of the authority.  See id.  The Court, therefore, extended

10   tribal immunity to tribal employees, and did not allow the plaintiff to bypass "tribal immunity

11   merely by naming a tribal official . . . [or] employee[] when they are sued in their official

12   capacity."  Id. at 727.  "Accordingly, we hold that tribal immunity protects tribal employees

13   acting in their official capacity and within the scope of their authority" Id.

14        Here, plaintiff names several tribal officials and employees.[1]  As outlined above,

15   defendants Boulton, Martin, Sandusky, White, Harter, and Steele have provided evidence that

16   they are not only employees of the Tribe or Casino, but they are actually officials of the Tribe.

17   Defendants Boulton, Martin and Sandusky, as members of the Tribal Gamming Commission, are

18   elected by the general membership of the Tribe, answer directly to the tribal members, and are

19   responsible for the Casino's compliance with the law.  Defendant White is the general manager

20   of the Casino.  As such, defendant White answers directly to the Tribal Council and has overall

21   management responsibility for the Casino.  Defendant Harter, as the Director of Human

22   Resources, has overall responsibility for personnel policy and decisions at the Casino, and

23   answers to the Casino's General Manager, the Tribe and/or its Gaming Commission.  All of these

24   defendants answer, at least in part, directly to the Tribal Council and/or the general tribal

25

26        [1]        The only defendants who are not employees or officials of the Tribe are
     defendants Mattie Mayhew and Tasha Hernandez.

membership.  The other defendants, Hedrick, Hatley and Brown, have submitted declarations indicating that as part of the security and/or surveillance departments, they report either to the Casino's general manager or the Tribal Gaming Commission.  While these defendants may not be "officials" of the Tribe, there is no doubt they are employees.  As the Ninth Circuit has now decided tribal immunity applies to employees acting within the scope of their employment, the important question becomes not whether they are officials, but whether they were acting within the scope of their employment.

In Cook, the Ninth Circuit did not define "scope of employment." In that case it was unnecessary to do so because the plaintiff had only sued the individuals in their official capacity.  See 458 F.3d at 727.  Here, plaintiff does not specify whether the individuals were sued in their official or individual capacities.  It therefore is necessary to determine whether the defendants were acting within the scope of their employment to determine whether the tribal immunity applies.

In defining scope of employment, it is instructive to look to the doctrine of respondeat superior in terms of vicarious liability.  The Ninth Circuit, in defining course and scope of employment in relation to whether an employer benefitted from an employee's RICO violation, relied on the Restatement (Second) Agency §§ 219, 228.  The Ninth Circuit stated:

> Within the course and scope of employment means: (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform.

Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775-76 (9th Cir.2002).

California law defines "course and scope" somewhat differently; under the California doctrine of respondeat superior,

> An employee is acting within the scope of his or her employment if either one of two conditions is met: (1) the act performed was either required or incident to her duties, or (2) the employee's misconduct could be reasonably foreseen by the employer.

10

1  Randolph v. Budget Rent-A-Car, 97 F.3d 319, 327 (9th Cir. 1996) (citations omitted).  Under

2  either of these definitions, defendants Boulton, Martin, Sandusky, White, Harter, Steele, Hedrick,

3  Hatley and Brown were all acting within the scope of their employment and are therefore covered

4  by tribal immunity.

5  　　　　　　　Plaintiff's third amended complaint generally alleges that the defendants filed

6  false charges against him, instituted a false investigation, and terminated his employment, all in

7  violation of his rights.  Reading plaintiff's complaint liberally, he makes the following specific

8  claims.  He alleges that defendants Mattie Mayhew and Ricky Mayhew conspired[2] to and did file

9  false charges against him with the Tribe and/or Casino, because plaintiff took the guardianship

10 issue to state court and because he is white.  Defendants Hatley, Ricky Mayhew, Brown, and

11 Hedrick conducted a sham investigation on these alleged false charges based on their

12 employment with the Casino as security personnel, even though they knew the charges to be

13 false.  Defendants Boulton, Martin and Sandusky were made aware of the false claims by

14 defendants Ricky Mayhew and Brown, and agreed to have plaintiff's employment terminated.

15 Defendants Harter and White, as Director of Human Resources and General Manager of the

16 Casino, agreed with plaintiff's termination and failed to follow their own practices and

17 procedures by not meeting with plaintiff after he requested such a meeting.  He further alleges

18 that "[e]ach defendant knew of the false charges which they acted on, or in this case purposely

19 avoided doing what was written and required of them, per their own rules and regulations as well

20 as policies and procedures."  (TAC at 5).   Finally, as to defendant Steele, as Director of ICWA,

21 plaintiff alleges she was involved in removing the children from plaintiff's home, under allegedly

22 false pretenses and in violation of an oral contract.

23 　　　　　　　With the exception of Ricky Mayhew filing false charges with the Casino, all of

24 plaintiff's allegations to these defendants arise from their actions as employees or officials of the

25

26 　　　　[2]　　　The court previously dismissed plaintiff's conspiracy claims.  Although he
continues to allege conspiracy, those claims remain dismissed.

1   Tribe and/or Casino.  First, plaintiff alleges that defendants Boulton, Martin and Sandusky, as

2   Tribal Gaming Commissioners, who allegedly knew the claims against plaintiff were false,

3   agreed to cooperate in having plaintiff terminated.  They allegedly used their positions as

4   Commissioners to participate in the termination of plaintiff's employment.  There are no

5   allegations in the complaint which indicate the Gaming Commissioners acted in any manner

6   other than in their official capacity with the Tribe.

7           Next, plaintiff alleges that defendants White and Harter, in their positions as

8   general manager and human resources director, failed to follow their own policies and procedures

9   in regards to allowing plaintiff to meet with them following his termination.  Again, there is

10  nothing in the complaint alleging they acted outside the scope of their employment.  Whether or

11  not to meet with a terminated employee certainly falls within the discretion of a human resources

12  director and general manager.  While plaintiff alleges they failed to follow their own proper

13  procedure, this does not bring their actions outside the scope of their employment.  Accordingly,

14  these two defendants should also be covered by tribal immunity.

15          As to defendant Steele, identified in the complaint as the ICWA Director, plaintiff

16  alleges she undertook to remove the tribal children from his home through false pretenses and in

17  violation of a verbal contract or agreement he had with her.  Plaintiff alleges that once the

18  children were in defendant Steele's vehicle, she informed him that the children would not be

19  returning.  Plaintiff again fails to allege any acts outside the scope of defendant Steele's

20  employment.  As the ICWS Director, defendant Steele arranged visitation between tribal children

21  and their natural parents.  While defendant Steele allegedly acted under false pretenses in

22  obtaining possession of the children, she was still acting within the scope of her employment.

23  Tribal immunity should be applied.

24          Plaintiff alleges defendant Hedrick, as a supervisor in security, had to know of and

25  approve the investigation.  Plaintiff makes the conclusory claim that all of the defendants knew

26  the charges made against him were false.  He does not however, specify how defendant Hedrick

knew the allegations were false, nor does he specify that defendant Hedrick actually took part in the alleged sham investigation, other than simply knowing about it.  Similarly, plaintiff makes vague allegations that defendant Hatley conducted the sham investigation on the false charges. Here again plaintiff does not specify that defendant Hatley knew the charges were false and instead relies on the conclusory claim that all of the defendants knew the charges were false. Finally, plaintiff alleges that defendant Brown, specifically knowing the charges against plaintiff were false, helped defendant Ricky Mayhew facilitate the sham investigation and obtain plaintiff's termination.

These three defendants, Hedrick, Hatley, and Brown, were all employees in the security and/or surveillance department.  As employees in the security and/or surveillance department, it would have been within their employment to investigate charges of wrong doing made to the Tribe and/or Casino about one of their employees.  Plaintiff certainly does not make the allegation that any of these defendants specifically acted outside the scope of their employment in conducting an investigation, at least not beyond the allegation that the investigation was a sham.  The difficulty here, in deciding whether the investigation into the charges against plaintiff was conducted within the scope of the defendants' employment, is plaintiff's allegation that all of the defendants knew the charges were false and that the investigation was a sham the defendants participated in to have plaintiff terminated.  The question, therefore, is whether conducting an investigation into charges known to be false brings the defendants' actions outside the scope of their employment.

Instructive in answering this question is a case from the California Supreme Court, Mary M. v. City of Los Angeles, 285 Cal. Rptr. 99 (Cal. 1991).  In Mary M., the California Supreme Court found that the city was liable, under respondeat superior, when an on-duty  police officer misused his authority by raping a woman he had detained.  The court found that the police officer had the authority to use force against individuals within the scope of his employment, and that rape was a form of force.  Even though in this instance he misused his

1  power, he was still acting within the scope of his employment by using force.  <u>See</u> 285 Cal. Rptr.

2  at 107-08.

3         Similarly, the security and/or surveillance employees are alleged to have

4  conducted an investigation into charges which they knew to be false.  While conducting a "sham"

5  investigation may have been an abuse of their power, investigations into charges were still within

6  the scope of employment.  This is not a case where a tribal official is attempting to cloak himself

7  in tribal immunity from claims not related to his position.  <u>See e.g., Puyallup Tribe, Inc. v. Dep't</u>

8  <u>of Game</u>, 433 U.S. 165 (1977) (permitting a state court to 'adjudicate the rights of the individual

9  defendants,' related to fishing rights because those defendants, including several who were tribal

10 officials, had been acting as fishermen rather than tribal government officers when they engaged

11 in the challenged activities).  Instead, the claims raised by plaintiff are that the defendants, as

12 employees of the Casino, used their position to conduct a sham investigation.

13        Looking to the definition of "scope of employment" set forth in the Restatement

14 (Second) outlined above, plaintiff's allegations are that defendants Brown, Hatley and Hedrick

15 conducted a sham investigation into the false charges made against him.  This conduct, an

16 investigation, is substantially "within the time and space limits authorized by the employment."

17 Plaintiff alleges the defendants acted with the intent to discriminate against him because he is

18 white and failed to follow the directions from other tribal members not to utilize "the white

19 man's court."  It is clear that if the defendants participated in this "sham investigation" as

20 plaintiff alleges, their actions were at least in part motivated to serve their employer, the Tribe.

21 Finally, the act of investigation was "of a kind that the employee was hired to perform."

22 Therefore, either under the Restatement (Second)'s definition of "scope of employment" or the

23 California definition, the investigation was an act within the scope of the defendants'

24 employment, and tribal immunity should apply.

25        This leaves defendant Ricky Mayhew, the last defendant who was an employee of

26 the Tribe and/or Casino.  The allegations plaintiff makes related to this defendant go beyond his

1   employment.  Plaintiff alleges that defendants Mattie and Ricky Mayhew worked together to file

2   false charges against him with the Tribe and/or Casino, in an attempt to get him terminated from

3   his employment.  Plaintiff further alleges that Ricky Mayhew worked with the other defendants

4   to use the false charges as the basis for a sham investigation which he participated in.  As to

5   defendant Ricky Mayhew's involvment in the alleged sham investigation, those actions would be

6   covered by tribal immunity, as discussed above.  However, his actions in filing the false charges

7   in conjunction with defendant Mattie Mayhew had nothing to do with his employment.

8   Therefore, he would not be protected against these charges by the application of tribal immunity.

9           The motion to dismiss for lack of subject matter jurisdiction over defendants

10   Boulton, Martin, Sandusky, White, Harter, Steele, Hedrick, Hatley and Brown should be granted,

11   and the claims against them should be dismissed with prejudice.[3]

12          B.      FAILURE TO STATE A CLAIM

13                  1.      The Mayhews

14           Following the discussion above, the only defendants left to raise an argument that

15   plaintiff's third amended complaint fails to state a claim are defendants Mattie Mayhew, Ricky

16   Mayhew and Hernandez.  Plaintiff's third amended complaint alleges his rights under 42 U.S.C.

17   § 1981 were violated by the alleged false accusations Mattie and Ricky Mayhew made.[4]  Reading

18   the complaint liberally, plaintiff alleges these two defendants filed the false charges against him

19   in retaliation of his utilizing the state courts, and in an attempt to have his employment with the

20

21          [3]      Plaintiff's third amended complaint contains an argument that the Casino and/or
       Tribe waived sovereign immunity.  The issue of waiver was resolved by the Ninth Circuit during
22     a prior appeal.  The Ninth Circuit, explaining that a waiver of immunity must be clear and
       unequivocal, found the Casino did not waive immunity.  See Allen v. Gold Country Casino, 464
23     F.3d 1044, 1047-48 (9th Cir. 2006).  Nothing in plaintiff's complaint alters that finding.
       Plaintiff's request to amend his complaint again to bring the Casino and/or Tribe back into this
24     action should be denied.

25          [4]      To the extent plaintiff continues to allege conspiracy, the court has previously
       found he does not have standing to bring an action under 42 U.S.C. § 1985 for conspiracy.
26     Therefore, any claims plaintiff makes in relation to a conspiracy are disregarded.

1    Casino terminated because he is white.  He cites CBOCS West, Inc. v. Humphries, 128 S. Ct.

2    1951 (2008) as support for his retaliation claims.

3           Defendants argue plaintiff fails to state a claim under 42 U.S.C. § 1981 for

4    retaliation.  The defendants, relying on Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006),

5    contend that to state a claim for retaliation, plaintiff must allege the retaliation was in response to

6    protective activity opposing an unlawful employment practice.  Instead, plaintiff's complaint

7    alleges he was fired in retaliation for utilizing the state courts regarding guardianship, not for any

8    opposition to unlawful employment practices.

9           However, the defendants read plaintiff's complaint too narrowly.  Reading the

10   complaint liberally, plaintiff alleges that the Mayhews, in filing the alleged false allegations,

11   acted with the intention of getting plaintiff terminated from his employment with the Casino

12   because he was white and in retaliation for going to state court

13           Section 1981(a) states :

14           All persons within the jurisdiction of the United States shall have
             the same right in every State and Territory to make and enforce
15           contracts, to sue, be parties, give evidence, and to the full and equal
             benefit of all laws and proceedings for the security of persons and
16           property as is enjoyed by white citizens, and shall be subject to like
             punishment, pains, penalties, taxes, licenses, and exactions of
17           every kinds, and to no other.

18           "The liability of an individual actor under section 1981 is established if, on the

19   basis of race, he intentionally interferes with another's right 'to make and enforce contracts.'

20   That individual may be liable regardless of whether the employer or anyone else may also be held

21   liable."  Kolb v. State of Ohio, Dept. of Mental Retardation, 721 F. Supp. 885, 891-92 (N.D.

22   Ohio 1989) (citing  Faraca v. Clements, 506 F.2d 956 (5th Cir. 1975); Coley v. M & M Mars,

23   Inc., 461 F. Supp. 1073, 1076 (M.D. Ga. 1978)).  "Although private actions under § 1981 which

24   seek to vindicate the right to contract to earn a living have traditionally arisen out of an

25   employment relationship, § 1981 has been applied where there is no direct employer/employee

26   relationship but where the discriminating entity interfered with the plaintiff's ability to enter into

an employment contract on the basis of race." <u>Shirkey v. Eastwind Community Development</u> <u>Corp.</u>, 941 F. Supp. 567, 573 (D. Md. 1996) (citing <u>Daniels v. Pipefitters' Assn. Local Union No.</u> <u>597</u>, 945 F.2d 906, 914-15 (7th Cir. 1991)); <u>see also</u> <u>Al-Khazraji v. St. Francis College</u>, 784 F.2d 505, 518 (3d Cir. 1986).

Applying these standards to a liberal reading of plaintiff's allegations in the case at bar, this court cannot say that plaintiff could prove no set of facts entitling him to relief under § 1981. Plaintiff has alleged that the Mayhews intentionally interfered with his employment with the Casino based on his race. As courts have held, the individual defendants need not be in direct privity of contract with plaintiff to be liable and need only to have interfered with plaintiff's right to contract. Weighing a motion to dismiss, the question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" <u>Scheuer v.</u> <u>Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see also</u> <u>Hydrick v. Hunter</u>, 500 F.3d 978, 985 (9th Cir. 2007). Therefore, the motion to dismiss as to Mattie and Ricky Mayhew should be denied.

## 2.  Hernandez

Next, plaintiff alleges defendant Hernandez (who is apparently the biological mother of the children plaintiff was attempting to obtain guardianship over) acted with Ms. Steele in an attempt to regain custody of the children. Plaintiff makes vague allegations that defendants Hernandez and Steele conspired in a plan to remove the children from plaintiff's household. However, these allegations are unclear, and the court previously found plaintiff could not state a claim for conspiracy under 42 U.S.C. § 1985. Plaintiff has been provided several opportunities to amend his complaint in order to state a claim against the defendants. It appears plaintiff is unable or unwilling to articulate his claim against defendant Hernandez, and the motion to dismiss should be granted, without leave to amend. <u>See</u> <u>Leadsinger, Inc. v. BMG</u> <u>Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008).

/ / /

/ / /

3.       18 U.S.C. § 1001

Finally, plaintiff's complaint appears to attempt a claim under 18 U.S.C. § 1001. His claim is unclear.  However, § 1001 is a criminal statute that creates no private right of action. See Barch v. State of Hawaii Dept. of Labor & Indus., 2006 WL 30789, *3 (D. Hawaii 2006). Therefore, plaintiff has no standing to bring any claim under § 1001, and any claim he is attempting to state must be dismissed.

C.       SERVICE OF PROCESS

The defendants also allege they were improperly served with the third amended complaint.  The defendants claim that plaintiff himself attempted service on the defendants.  A review of the docket in this case reveals that the proof of service of the third amended complaint, which was served by mail on the attorney of record for defendant Mattie Mayhew, was signed by plaintiff himself.  Similarly, the return of service of the summons and complaint on defendant Ricky Mayhew is signed by plaintiff as the server.  In addition, plaintiff acknowledges that he himself delivered the summons to the defendant's place of business, and states that he was following the undersigned's previous instruction pursuant to Rule 4(e).

The court acknowledges that plaintiff is proceeding pro se, and is not experienced or trained in legal proceedings.  However, he is still required to follow proper procedure. Unfortunately, the issue previously addressed by the court was plaintiff's attempt to serve those defendants who had not yet appeared in this action by simply mailing the summons and complaint to the attorney of record for other defendants.  This was erroneous pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.  Plaintiff was instructed to effect proper service, including personal service on defendants who have not yet appeared in this action.  Plaintiff apparently took this court's instruction literally and attempted to serve the defendants himself.

Service of a summons is governed by Rule 4; service of other pleadings on a party to the action is governed by Rule 5.  This court's previous instruction to plaintiff was not erroneous and addressed the issue before the court at that time.  However, service by a party to

18

the action was not an issue previously, as the prior return of service was signed by an individual who was not a party.  Rule 4(c)(2) specifies that service of a summons must be completed by a "person who is at least 18 years old and not a party" to the action.  Plaintiff is advised to review all of the requirements for proper service pursuant to the Federal Rules of Civil Procedure. Plaintiff should be required to properly serve the third amended complaint on the two remaining defendants, Ricky and Mattie Mayhew.

Mattie Mayhew has previously appeared in this matter and has an attorney of record on the docket.  Service of Mattie Mayhew would, therefore, be governed by Rule 5(b), and service by mail is appropriate.  However, Ricky Mayhew has not been properly served with process pursuant to Rule 4, which requires each defendant to be personally served.  This is not to say that plaintiff himself should serve the summons and complaint, but rather that it is required that the defendant himself be served in person, not by mail.

Accordingly, plaintiff should be required to properly serve his third amended complaint on the two remaining defendants, Ricky Mayhew (for who personal service remains a requirement) and Mattie Mayhew (for which service by mail on her attorney of record is acceptable).  Plaintiff is again advised to review Rules 4 and 5 of the Federal Rules of Civil Procedure for the proper service procedures.[5]

### III.   CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.   The motion to dismiss be granted in part and denied in part;

2.   The motion to dismiss for lack of subject matter jurisdiction over defendants Boulton, Martin, Sandusky, White, Harter, Steele, Hedrick, Hatley and Brown should be granted, and the claims against them should be dismissed with prejudice, as they are immune

---

[5]    The court will point plaintiff to Rule 4(d) which allows for requesting a waiver of service.  As the defendants are well aware of this action, and counsel has already received a copy of the operative complaint, the court hopes the parties can work together sufficiently to overcome the service issues in this action.

from suit under tribal immunity;

      3.    The motion to dismiss for failure to state a claim as against defendant Hernandez be granted, and the claims against her dismissed without leave to amend;

      4.    The motion to dismiss for failure to state a claim as against defendants Mattie Mayhew and Ricky Mayhew be denied;

      5.    Any claim under 18 U.S.C. § 1001 be dismissed as plaintiff has no standing to bring such a claim;

      6.    The motion to dismiss for failure to effect proper service be granted;

      7.    Plaintiff be ordered to effect proper service as against defendants Mattie and  Ricky Mayhew;

      8.    Defendants Boulton, Martin, Sandusky, White, Harter, Steele, Hedrick, Hatley and Brown be dismissed from this action;

      9.     This case proceed as against defendants Ricky Mayhew and Mattie Mayhew under 42 U.S.C. § 1981 only; and

      10.    Plaintiff's request for leave to amend be denied.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED:  February 19, 2009

                                           _____
                                          **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE